# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                                          Elisabeth A. Shumaker
Clerk                                                                                            Chief Deputy Clerk

September 17, 1996

**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-3184, USA v. Aranda-Hernandez
       August 30, 1996 by The Honorable Nathaniel R. Jones

Please be advised of the following correction to the captioned decision:

The accompanying opinion is substituted for the opinion previously filed. The opinion filed August 30, 1996, is withdrawn.

Please discard existing copies of the opinion filed August 30, 1996.

Very truly yours,

Patrick Fisher, Clerk

Trish Lane
Deputy Clerk

encl.

_____

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
) No. 95-3184
    v. )
)
TRINIDAD ARANDA-HERNANDEZ, )
)
    Defendant-Appellant. )

_____

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 94-10084-01)

_____

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the brief), Wichita, Kansas, for Defendant-Appellant.

Brian R. Johnson, Special Assistant United States Attorney (Randall K. Rathbun, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

_____

Before ANDERSON, McKAY, and JONES,* Circuit Judges.

_____

JONES, Senior Circuit Judge.

_____

*Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

## I.

Defendant Trinidad Aranda-Hernandez (hereinafter Aranda) appeals his conviction and sentence for illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326. We affirm.

In 1984, Aranda was convicted of possessing marihuana with the intent to distribute and was subsequently deported to Mexico. After his deportation, Aranda returned to the United States. On August 2, 1994, Aranda was arrested and detained in Kansas by officials of the Immigration and Naturalization Service (INS) for illegally reentering the United States. Aranda was charged by Information with illegal reentry after deportation on August 5, 1994. Aranda did not waive his right to indictment.

At the detention hearing and arraignment, held August 15, 1994, Aranda moved to dismiss the Information and requested a preliminary examination pursuant to Federal Rules of Criminal Procedure 5(c) and 5.1. The magistrate concluded she did not have the authority to rule on Aranda's motion and referred the matter to the district court. Aranda remained in custody.

On August 24, 1994, a grand jury returned an Indictment against Aranda on the same charge contained in the Information. The district court then dismissed as moot Aranda's motion to dismiss the Information and motion for a preliminary examination. On December 23, 1994, Aranda filed a motion to dismiss the Indictment based upon an alleged illegality in his deportation proceeding and another motion for a preliminary examination.

Between the United States' response to Aranda's motions and the scheduled hearing, Aranda entered into plea negotiations. On January 30, 1995, Aranda entered a conditional plea of guilty, preserving for appeal the issues he raised in his pretrial motions. Aranda's plea was also

conditioned on the determination of whether his 1984 conviction, which was the subject of his initial deportation proceeding, was an aggravated felony qualifying him for a sixteen- level sentencing guideline enhancement under U.S.S.G. § 2L1.1.

Aranda was sentenced on May 23, 1995. The district court determined that Aranda's past conviction was an aggravated felony which warranted the sixteen level enhancement. Aranda was sentenced to the statutory maximum sentence of 60 months. Aranda then filed this timely appeal.

## II.

### A.

Aranda argues that the magistrate erred by not dismissing the Information filed against him because the government initiated his felony prosecution by information rather than by indictment. *See* Fed. R. Crim. P. 7(a) (effectuating Fifth Amendment requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury). Aranda contends that until the Indictment was returned, the court had no jurisdiction to detain him. Aranda further alleges that in this district the United States has adopted the practice of charging by information then subsequent indictment, rather than by complaint, in order to subvert defendants' right to a preliminary examination, as provided for by 18 U.S.C. § 3060 and Federal Rule of Criminal Procedure 5(c). Aranda claims that this charging practice, which allows the government to circumvent the preliminary examination requirement, violates his Fifth Amendment right to due process. We review these issues *de novo*.

3

We first dispense with Aranda's contention that he was prosecuted improperly by information for an offense punishable by more than one year of imprisonment. Although Aranda was initially detained on the Information, he was indicted before a grand jury within the time permitted by statute. *See* 18 U.S.C. § 3161(b) (providing that an indictment must be filed against a defendant within thirty days of the defendant's arrest). Clearly, the government did not violate Aranda's Fifth Amendment right to be prosecuted by indictment.

Next, we address whether the district court violated the requirements of Federal Rules of Criminal Procedure 5(c) and 5.1 or Aranda's Fifth Amendment right to due process by failing to provide him with a preliminary examination. A defendant is entitled to a preliminary examination, unless waived, when charged with any offense, other than a petty offense, which is to be tried by a judge of the district court. 18 U.S.C. § 3060; Fed. R. Crim. P. 5(c). If a defendant is in custody, the magistrate must schedule the preliminary examination within 10 days. 18 U.S.C. § 3060(b)(1); Fed. R. Crim. P. 5(c). If, however, an indictment is filed against the defendant before the date scheduled for the preliminary examination, the examination should not be held. 18 U.S.C. § 3060(e); Fed. R. Crim P. 5(c). A defendant who has been held in custody without receiving a preliminary examination and without being charged by the appropriate indictment or information should be discharged from custody without prejudice to the filing of further criminal proceedings. 18 U.S.C. § 3060(d); Fed. R. Crim. P. 5(c); *United States v. Taylor*, 465 F.2d 1199 (10th Cir. 1972). This remedy extends only to defendants who remain in custody without being properly charged. If an indictment has been returned and the defendant is subsequently convicted, the conviction will not be reversed for failure to hold the preliminary examination. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *United States v. Bohrer*,

4

807 F.2d 159, 161 (10th Cir. 1986); *Taylor*, 465 F.2d at 1199. There is no doubt that Aranda was denied a preliminary examination. Nevertheless, there is no relief this court can provide him for this departure from 18 U.S.C. § 3060(b) and Federal Rule of Criminal Procedure 5(c). As dictated by *Gerstein* and *Bohrer*, a conviction may not be overturned for a failure of the district court to conduct a timely preliminary examination. We can only acknowledge the irregularity in the proceedings in Aranda's case.

Further, we can provide no relief on Fifth Amendment due process grounds. Although the right to a preliminary examination is embodied in the United States Code and the Rules of Criminal Procedure, the right is not constitutional. *Snow v. State of Oklahoma*, 489 F.2d 278, 279 (10th Cir. 1973). Due process attaches only to a right to a judicial determination of probable cause. *Gerstein*, 420 U.S. at 119. This judicial determination of probable cause may be in the form of a preliminary examination or it may in the form of an indictment; both are not required. *Id.* Therefore, once the Indictment was returned, Aranda's Fifth Amendment rights had been satisfied, and there was no reason to hold the preliminary examination. Accordingly, we will not disturb Aranda's conviction on these grounds.

**B.**

We must next decide whether the district court erred in failing to dismiss the Indictment due to alleged violations of due process in the underlying immigration proceedings. We review this mixed question of law and fact *de novo*. *United States v. Meraz-Valeta*, 26 F.3d 992 (10th Cir. 1994) (citing *United States v. Valdez*, 917 F.2d 466, 468 (10th Cir. 1990)).

Aranda was deported in 1989 after being convicted for possessing marijuana with the

intent to distribute. In early 1990, he was paroled back into the United States. The government terminated Aranda's parole in 1992 and placed him in exclusion proceedings under section 236 of the INA. *See* 8 U.S.C. § 1226. Aranda applied for asylum under section 208 of the INA and/or withholding of deportation under section 243 of the INA, claiming that he should be afforded protection as a member of a particular social group that has a well founded fear of persecution. *See* 8 U.S.C. §§ 1158, 1253.

The immigration judge rejected Aranda's asylum and withholding of deportation arguments. The immigration judge additionally concluded that Aranda was ineligible for relief under either section 208 or 243 because he had been convicted of a felony that was now, in 1992, considered an aggravated felony under the terms of the INA. Aranda was then ordered excluded and apprised of his right to appeal to the Board of Immigration Appeals. Aranda reserved his right to appeal; however, when Aranda failed to file a timely notice of appeal within the ten days permitted, the decision of the immigration judge became final.

After he was indicted for the present offense, Aranda moved to dismiss the indictment based upon irregularities in the underlying deportation proceedings. In his motion, Aranda contended that the immigration judge did not fully explain his rights to appeal and consequently deprived him of meaningful judicial review of the immigration proceedings. The district court denied the motion, finding that Aranda had "made no threshold showing that he was entitled to relief or suspension from deportation such that the alleged failure of the immigration judge to fully explain the defendant's rights made any difference in the outcome of the proceeding." Record, Vol. I at 3-4.

The Supreme Court has held that when determinations made in the immigration hearing

6

played a substantive role in the subsequent imposition of a criminal sanction, a meaningful review of the administrative proceeding must be provided. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). In *Mendoza-Lopez*, the Court held that where defects in the deportation proceeding have effectively foreclosed direct judicial review of the deportation order, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish deportation conclusively as an element of a § 1326 offense (illegal reentry into the United States after *deportation*). *Id.*

We undertake a two-part inquiry when determining whether deportation has been established for the purposes of a § 1326 conviction. We first examine whether the proceedings were fundamentally unfair, and second we determine whether the deportation hearing effectively foreclosed the defendant's right to a direct appeal. *Meraz-Valeta*, 26 F.3d at 998. In order to show fundamental unfairness, the defendant must demonstrate he was prejudiced.

Aranda's position in this appeal is made confusing by the procedural posture of his challenge. Aranda does not directly challenge the 1989 deportation order. Instead, he contends that the immigration judge's refusal to hear his asylum and withholding of deportation claims during the 1992 exclusion proceedings deprived him of a challenge to his 1989 deportation order. We find no merit in his claims.

Aranda cannot satisfy the second element of this test because the immigration judge apprised Aranda of his right to appeal at the end of the deportation hearing. *See* Aranda's Appendix C at 40 (Transcript of Exclusion Hearing). Aranda's failure to appeal cannot be attributed to the immigration judge. Nevertheless, Aranda argues that he was deprived of a right to an *effective* appeal because the immigration judge had refused to hear evidence on his theory

7

of the case. Aranda argues that the immigration judge should have allowed him a continuance during which he would have had sufficient time to gather evidence and develop his theory of social group or class.

Aranda has misconstrued the guarantee to review of the underlying immigration proceedings. The right to judicial review does not establish a right to an error-free immigration hearing. It grants a right to appeal if the immigration judge errs in construing the law or facts of the case. In his current appeal, Aranda argues that the immigration judge incorrectly applied the social group asylum standard. This is precisely the argument that Aranda should have raised to the Board of Immigration Appeals and then, if necessary, to the Fifth Circuit. Aranda waived his direct appeal, and now inappropriately seeks review of his immigration case in the Tenth Circuit. We will not engage in such review.

Furthermore, Aranda would not be able to demonstrate that he was prejudiced by the court's barring his claim. Aranda's "social group theory" is not supported by case law; nor is it supported by the principles underlying the Act. Because we see no merit in Aranda's theory of relief under the INA, we cannot find that he was prejudiced by the immigration judge's refusal to consider this claim. The district court was correct in denying Aranda's motion to dismiss the Indictment.

## C.

Finally, we determine whether the district court erred in applying the sixteen-level aggravated felony enhancement to Aranda's base offense level. We review the district court's interpretation of a sentencing guideline *de novo*. *United States v. Blake*, 59 F.3d 138, 139 (10th

Cir. 1995) (citing *United States v. Johnson*, 42 F.3d 1312, 1320 (10th Cir. 1994)), *cert. denied*, 116 S. Ct. 580 (1995).

The illegal reentry sentencing guideline provides a base offense level of 8 for illegal reentry into the United States.  Subsection (b) provides the following:

(b)     Specific Offense Characteristics
        If more than one applies, use the greater:

   (1)     If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by **4** levels.

   (2)     If the defendant previously was deported after a conviction for an aggravated felony, increase by **16** levels.

U.S.S.G. § 2L1.2(b).  The commentary to this guideline cross references the aggravated felony definition found in the Immigration Act at 8 U.S.C. § 1101(43).  Aranda's presentence report recommended the 16 level increase.

Aranda objected to the sixteen-level increase on the ground that the 1990 effective dates of the aggravated felony amendments precluded consideration of his 1984 drug conviction as an aggravated felony.  Specifically, Aranda alleged that it was not Congress' intent to classify drug felonies committed before 1990 as aggravated felonies.  Second, Aranda contends that the retroactive application of the provision would violate his rights under the Ex Post Facto Clause of the Constitution.

**1.**

After thoroughly considering the legislative history, we conclude that Congress intended to include crimes committed before 1990 in the application of the aggravated felony

enhancement. Because Aranda illegally returned to the United States after the effective date of the new amendments, his past conviction for drugs, although occurring in 1984, was properly treated as an aggravated felony for purposes of the reentry statute.

In 1988, Congress passed the Anti-Drug Abuse Act of 1988 (ADAA). Subtitle J of the ADAA made several amendments to the INA. The illegal reentry statute, 8 U.S.C. § 1326, was amended to differentiate between illegal reentry after a felony and illegal reentry after an aggravated felony. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7345(b), 102 Stat. 4181, 4471 (1988). Illegal reentry after a felony subjects a defendant to a maximum five year sentence, whereas illegal reentry after an aggravated felony carries a maximum fifteen year sentence. The applicability section of this amendment states: "the amendments made by subsection (a) shall apply to any alien who enters, or attempts to enter, or is found in, the United States on or after the date of the enactment of this Act. 102 Stat. at 4471.

The definition of aggravated felony is found in the general definition section for the Immigration Act. *See* 8 U.S.C. § 1101(43)(a). The ADAA amended this definition to include any drug trafficking crime as defined in section 924(c)(2) of Title 18, in the definition of aggravated felony. Pub. L. 100-690, § 7342, 102 Stat. 4469. Still, a subsequent amendment to the definition appeared in Public Law 101-649, which amended certain provisions of the Immigration Act only. *See* Pub. L. 101-649, § 501, 104 Stat. 5048. In this subsequent amendment, the definition of aggravated felony was again changed to include illicit trafficking in a controlled substance as defined in 18 U.S.C. § 802. Although the amendment in Public Law 101-649 did not become generally effective until 1990, the amendment provided the following: "The amendments made by subsection (a) shall apply to offenses committed on or after the date

10

of the enactment of this act [November 1990], *except that the amendments made by paragraphs (2) and (5) of subsection (a)* [the drug offense provision] *shall be effective as if included in the enactment of section 7342 of the [ADAA]*." Pub. L. 101-649, 104 Stat. 5048 (emphasis added). Based on this provision, the inclusion of illicit trafficking in a controlled substance in the definition of aggravated felony should be read as effective in 1988. This means that only offenses which are non-drug-related must be committed after 1990 in order to be considered aggravated.[1]

Congress' statement that the aggravated felony amendments "shall apply to any alien who enters, attempts to enter, or is found in the United States on or after the date of the enactment of this Act" indicates Congress' intent to increase immediately the punishments for illegally reentering after an aggravated felony. Congress did not indicate that it wished the aggravated felony provision to apply only to aggravated felonies committed after 1988 in either the amendment to the criminal provision or the amendment to the definition section. The 1990 amendment to the definition does mention an effective date of November 19, 1990, but that date applies only to those aggravated felony offenses that were not addressed by the ADAA in 1988. Aranda's offense does not fit into that category, so this date does not affect our analysis.

This circuit interpretation of the aggravated felony enhancement is in accord with other courts that have upheld the applicability of the aggravated felony enhancement to all past

---

[1] In the recently decided case of *United States v. Cabrera-Sosa*, 81 F.3d 998 (10th Cir. 1996), this court ruled that the aggravated felony enhancement applied to a defendant who was "convicted in 1990 of a crime defined at that time as an aggravated felony," subsequently deported and then convicted for illegally reentering the United States after his deportation. Although the issue was argued by both parties, the court in *Cabrera* was not required to resolve the issue of whether the aggravated felony amendments apply to prior convictions which occured before the 1988 or 1990 ADAA amendments. 81 F.3d at 1000 n.2. We reach that issue today.

11

felonies.  In *United States v. Arzate-Nunez*, the Ninth Circuit held that the proper inquiry is the

definition of aggravated felony that existed at the time of the illegal reentry, rather than that

which existed at the time the aggravated felony was committed.  18 F.3d 730 (9th Cir. 1994).

*See also United States v. Ullyses-Salazar*, 28 F.3d 932, 938-39 (9th Cir. 1994), *cert. denied*, 115

S. Ct. 1367 (1995).  Similarly, in *United States v. Troncoso*, 23 F.3d 612, 614 (1st Cir. 1994) and

*United States v. Forbes*, 16 F.3d 1294 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 912 (1995) the

First Circuit adopted the Board of Immigration Appeals' interpretation of the statute.  The court

agreed that:

> For an alien reentering the United States on November 18, 1988 [the effective
> date of ADAA], to be subject to these criminal penalties, the alien would need to
> have suffered a conviction and deportation before November 1988.  It would be
> virtually impossible for an alien convicted of an aggravated felony to reenter or be
> found in the United States on the date of enactment unless the definition of
> aggravated felony included conviction occurring before that date.

*Troncoso*, 23 F.3d at 614 (quoting In *Matter of A-A-*, Interim Dec. 3176 (BIA 1992)).  We are

persuaded by the reasoning of these decisions and accordingly hold that the aggravated felony

enhancement applies to all past aggravated felonies, regardless of the date committed.

## 2.

Finally, Aranda contends the even if the sentencing guideline does not violate the statute,

it violates the Ex Post Facto Clause of the Constitution.  We have recognized that the purpose of

the Ex Post Facto Clause is "`to restrain legislatures and courts from arbitrary and vindictive

action and to prevent prosecutions and punishment without fair warning.'" *United States v.

Gerber*, 24 F.3d 93 (10th Cir. 1994) (quoting *Devine v. New Mexico Dep't of Corrections*, 866

F.2d 1266 (5th Cir. 1988)).  In order for a violation of the Clause to occur, a law must apply to "`events occurring before its enactment'" and must "`disadvantage the offender affected by it.'" *Id.* (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

This circuit has already concluded that this sentencing enhancement does not unlawfully apply to events occurring before its enactment, because the offense charged is the illegal reentry, not the aggravated felony.  *United States v. Cabrera-Sosa*, 81 F.3d 998, 1001 (10th Cir. 1996). *See also United States v. Munoz-Cerna*, 47 F.3d 207 (7th Cir. 1995); *United States v. Saenz-Forero*, 27 F.3d 1016 (5th Cir. 1994); *Troncoso*, 23 F.3d at 612.  Although Aranda was disadvantaged by the increased sentence, "the penalties were unambiguous when he reentered the country." *Cabrera-Sosa*, 81 F.3d at 1001.  Aranda's sentence did not violate the Ex Post Facto Clause.

### III.

Pursuant to Federal Rule of Criminal Procedure 11, Aranda's guilty plea was conditioned upon the outcome of his issues on appeal.  Because Aranda has not prevailed on any of his claims, his guilty plea will stand.  Accordingly, we AFFIRM the district court's judgment of conviction and Aranda's sentence in their entirety.