F I L E D
United States Court of Appeals
Tenth Circuit

JUL 18 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RAUL MARTINEZ-MOREL,

    Defendant-Appellant.

No. 96-6234

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CR-95-165-M)

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma,
for Defendant-Appellant.

David Walling, Assistant United States Attorney, Oklahoma City, Oklahoma
(Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, and Mark
A. Yancey, Assistant United States Attorney, Oklahoma City, Oklahoma, with
him on the brief), for Plaintiff-Appellee.

Before **BRORBY**, **HOLLOWAY,** and **EBEL,** Circuit Judges.

**EBEL**, Circuit Judge.

Defendant-Appellant Raul Martinez-Morel (Martinez) was convicted of illegally reentering the United States after being deported, pursuant to 8 U.S.C. § 1326(a) (1994 & Supp. 1997). On appeal, Martinez claims that the district court erred in excluding evidence of his belief that he was not deported. He also asks the Tenth Circuit to reconsider, in light of the Supreme Court's decisions in United States v. X-Citement Video, Inc., 513 U.S. 64 (1994) and Staples v. United States, 511 U.S. 600 (1994), circuit precedent holding that the only mens rea the government must prove to obtain a conviction under section 1326 is the intent to enter the country.

We affirm the defendant's conviction. The district court did not abuse its discretion in excluding evidence of the defendant's state of mind with regard to his deportation, as such evidence is irrelevant to a conviction under section 1326. Further, we reject the defendant's argument that X-Citement Video or Staples require that the government prove a mens rea for each element of the crime to obtain a conviction under section 1326.

## BACKGROUND

On May 2, 1995, Sergeant Michael Pacheco of the Oklahoma City Police Department was on a routine patrol when he passed a 1978 Plymouth with a smashed windshield. Officer Pacheco stopped the car which was driven by defendant Martinez. Martinez could not produce a valid driver's license or proof of insurance, and only provided Officer Pacheco with a resident alien card that

was later determined to be false. After running a computer check and discovering that Martinez's driving privileges had been suspended, Pacheco arrested Martinez.

Subsequent to his arrest, the Immigration and Naturalization Service (INS) began an investigation of Martinez and learned that he had been deported to Mexico in 1993 and that he had not received permission from the Attorney General to reenter the United States. Martinez was then charged with illegally reentering the United States after being deported, pursuant to 8 U.S.C. § 1326(a).[1]

At the trial, the government introduced evidence of Martinez's prior deportation. Among that evidence was an order to show cause[2] issued in 1992, alleging that: (1) Martinez was not a citizen of the United States; (2) he was a citizen of Mexico; and (3) he entered the United States without being inspected by

---

[1]Section 1326(a) provides:
[A]ny alien who--
> (1) has been arrested and deported, has been excluded and deported, or has departed the United States while an order of exclusion or deportation is outstanding, and thereafter.
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.

[2]The charging document in a deportation proceeding.

an immigration officer. The government also introduced evidence of a deportation hearing that resulted in an order to deport Martinez. Martinez was served with a warrant of deportation and a warning letter advising him of the penalties for reentering the United States without first obtaining permission from the Attorney General. He was then taken from San Ysidro, California, to authorities on the Mexican side of the border.

During the government's case-in-chief, the defense sought to admit into evidence an 1-274 form. The form was given to Martinez on March 5, 1992, the date that he was initially contacted by the INS. It informed him of his right to a deportation hearing, to request to voluntarily depart,[3] and to be represented by counsel. The defense argued that the form would establish that the defendant believed that he had not been deported, but rather that he had voluntarily departed the country. The defense urged that such evidence would corroborate testimony by the defendant that he believed he had voluntarily departed the country. The court excluded the evidence.

---

[3] Pursuant to 8 U.S.C. § 1254(e) (1994) repealed as of April 1, 1997 by Pub. L. No. 104-208, Div. C., Title III, §§ 308(b)(7), 309(a). 110 Stat. 3009, 3009-1680, 3009-1697 to 3009-1698 (1996), "the Attorney General may, in his discretion, permit any alien under deportation proceedings . . . to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure . . . ."

After the government rested, the defense sought to introduce the testimony of the defendant that he thought he had voluntarily departed the country, and that, in fact, he was not deported. The defense again offered to admit the 1-274 form. The court excluded the testimony and the document. The defense then rested without putting on any evidence.

The court gave the jury the following instruction on the elements of the offense:

> In order for the defendant, Raul Martinez-Morel, to be found guilty of violating Section 1326 of Title 8, United States Code, the government must prove the following four elements beyond a reasonable doubt:
>
> First: the defendant is an alien;
> Second: who was arrested and deported;
> Third: and who thereafter voluntarily and knowingly was found in the United States;
> Fourth: without the permission of the Attorney General.

Martinez objected to this instruction, and to the court's rejection of an alternative instruction that required the government to prove that he <u>knowingly</u> was deported and reentered <u>knowing</u> that he did not have the permission of the Attorney General. The defendant acknowledges that under Tenth Circuit precedent the government is not required to prove a mens rea for those elements of section 1326. However, he submits that recent Supreme Court authority on issues of mens rea calls into question the validity of that Tenth Circuit precedent.

We reject Martinez's arguments. Neither X-Citement Video nor Staples requires the government to prove a mens rea for each element of the offense of illegal reentry after deportation, pursuant to 8 U.S.C. § 1326. That being the case, the district court did not err in refusing to give the requested instruction, or in excluding evidence of Martinez's belief that he was not deported.

## ANALYSIS

A. Exclusion of Evidence

"The decision to admit or exclude evidence is within the sound discretion of the trial court, and this court will not find an abuse of discretion unless we develop a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Levine, 970 F.2d 681, 688 (10th Cir. 1992). Martinez argues that the district court erred in excluding the 1-274 form and his proffered testimony that he did not believe he was deported and that, in fact, he was not deported.[4]

The district court did not abuse its discretion in excluding documentary and testimonial evidence of the defendant's belief that he was not deported. Such evidence was not relevant to a conviction under 8 U.S.C. § 1326(a) because that

[4]The government asserts that the defendant attempted to introduce evidence only of his mistaken belief that he was allowed to leave voluntarily. The record reveals that the defendant offered to testify that he thought he was not deported and that in fact he was not deported. However, as discussed below, the defendant offered no facts to support his claim that he was, in fact, not deported.

- 6 -

statute does not require the government to prove that the defendant <u>knew</u> that he was deported.  Rather, to obtain a conviction under section 1326(a), the government must prove only that the defendant 1) is an alien; 2) who was arrested and deported; and 3) who thereafter voluntarily reentered, attempted to reenter, or was found in the United States; 4) without the permission of the Attorney General.  <u>United States v. Meraz-Valeta</u>, 26 F.3d 992, 997 (10th Cir. 1994).  The only intent the government must prove is the "general intent to do the prohibited act, to-wit enter."  <u>United States v. Miranda-Enriquez</u>, 842 F.2d 1211, 1212 (10th Cir. 1988) (quoting <u>Pena-Cabanillas v. United States</u>, 394 F.2d 785, 790 (9th Cir. 1968)).

Evidence is relevant if it has "any tendency to make the existence of any fact <u>that is of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).  Since the defendant's belief about whether he was deported is not "of consequence to the determination of the action," the court was correct to exclude it.  In <u>Miranda-Enriquez</u>, we held that testimony about a defendant's mistaken belief that he had lawfully entered the country was properly excluded in a prosecution under section 1326, because specific criminal intent does not play a part in the crime charged.  842 F.2d at 1213.  <u>Accord</u> <u>United States v. Trevino-Martinez</u>, 86 F.3d 65, 68 (5th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1109 (1997)

- 7 -

(majority of circuits "agree that the statute neither requires the government to prove specific intent nor allows an alien to defeat conviction by demonstrating a reasonable belief of permission to reenter this country"); United States v. Leon-Leon, 35 F.3d 1428, 1432-33 (9th Cir. 1994) (defendant's reasonable belief that he entered the United States legally is irrelevant to prosecution under section 1326 because illegal reentry is not a specific intent crime). But see United States v. Anton, 683 F.2d 1011, 1018 (7th Cir. 1982) (defendant's belief that he entered country legally with the consent of the Attorney General constitutes a defense to charge under section 1326).

In his brief on appeal, the defendant claims that he also was deprived of the opportunity to present evidence that he actually was not deported. However, at trial, the defendant failed to make an offer of proof of any such evidence. On at least two occasions, the district court asked the defendant what the substance of his testimony would be and the purpose for which he would introduce that testimony and the 1-274 form. The defendant's answers were contradictory and confused. When the defendant's attorney, William P. Earley, first offered the 1-274 form into evidence, he explained its relevance as follows:

> One of the essential elements of this offense is that the Defendant was deported and Mr. Martinez will testify that he felt that he had voluntarily departed, was not deported. . . . This document is in his file. I'm going to ask the agent -- obviously he wasn't allowed to voluntarily depart. But I think it is important for the jury to know that Mr. Martinez signed this piece of paper where he agreed

- 8 -

to voluntarily depart, because it impacts on <u>what he thought</u> was happening after that.

(ROA Vol. II at 67) (emphasis added).

Later in the trial, Early offered a different description of the evidence he sought to admit.

> [Martinez] believes that he simply agreed to voluntarily depart from the country and <u>that's what occurred.</u>  That's what I anticipate he will testify to regarding Defendant's Exhibit 1[5]  as well as his understanding of the proceeding.
> The reason I think that is relevant is because one of the essential elements is that he was arrested and deported and the government obviously alleges he was deported.  Mr. Martinez's side of this is he wasn't deported, he voluntarily departed.

(ROA Vol. II at 120)

Although some of Early's statements indicate that the defendant would have testified that he was not deported, Early did not offer any specific facts to which Martinez would testify in support of his contention that he was not deported.[6] Nor did Martinez offer any evidence to contradict any of the government's evidence of his deportation.  Thus, the substance of the defendant's proffered

---

[5]Defense Exhibit 1 is the 1-274 form.

[6]Although the defendant offered the 1-274 form as evidence that he was not deported, the form offers no support for that proposition.  The form merely notifies an alien that he or she <u>may ask</u> to be allowed to voluntarily depart.  It does not, as defense counsel represented at oral argument, give an alien the <u>right</u> to voluntarily depart. Further, the form does not, as defense counsel represents in its brief, show that the defendant "requested voluntary departure."  (Brief of Appellant at 10).  There is no place on the form for an alien to indicate that he or she would like to voluntarily depart, and Martinez did not so indicate on the form.

evidence, regardless of how it was couched, was only that the defendant had a belief at the time of his reentry that he had not been deported.[7] As discussed above, such evidence is not relevant to a prosecution for illegal reentry after deportation, and the district court did not abuse its discretion in excluding the evidence.

The defendant argues that the district court violated his Sixth Amendment and due process rights to present witnesses in his defense. See Roviaro v. United States, 353 U.S. 53 (1957); Washington v. Texas, 388 U.S. 14 (1967). We disagree. The court did not prevent the defendant from calling witnesses or testifying in his own defense. Rather, the court only excluded irrelevant evidence. Neither Roviaro nor Washington stands for the proposition that a defendant's right to present evidence or call witnesses is unlimited. Rather, the cases establish the defendant's right to present relevant and material witnesses. See Washington, 388 U.S. at 16 ("It is undisputed that [the proffered] testimony would have been relevant and material . . . ."); Roviaro, 353 U.S. at 63 (describing proffered testimony as "highly relevant"). See also United States v.

---

[7]During a pre-trial examination, Martinez admitted on the record that although at the time of his deportation he thought he voluntarily departed, he later learned that he had been deported. In response to a question by his attorney whether he understood what he was charged with, Mr. Martinez said: "I understand that I left by means of a paper that permitted me to leave voluntarily and I could return to the United States. That's what I understood. Now, however, you, my attorney, explained to me that this is a violation because I left under a deportation order to my country." (ROA Vol. II. at 11).

Begay, 937 F.2d 515, 523 (10th Cir. 1991) ("[T]he Constitution requires that a criminal defendant be given the opportunity to present evidence that is <u>relevant, material and favorable</u> to his defense.") (quoting <u>United States v. Saunders</u>, 736 F. Supp. 698, 703 (E.D. Va. 1990)) (emphasis added).  Since the evidence the defendant sought to introduce was not relevant, the court did not abuse its discretion in excluding it.

<u>B. X-Citement Video and Staples Do Not Change the Mens Rea Requirement Under Section 1326</u>

The defendant also complains that the district court's instructions to the jury did not  require the jury to find that the defendant knew that he was deported or that he knew he entered the United States without the permission of the Attorney General.  Martinez acknowledges that the court's instructions were proper under Tenth Circuit precedent, as discussed above.  However, he urges us to reconsider such precedent in light of Supreme Court cases such as <u>United States v. X-Citement Video</u>, 513 U.S. 64 (1994) and <u>Staples v. United States</u>, 511 U.S. 600 (1994).  We decline to do so.

In <u>X-Citement Video,</u> the Supreme Court held that a statute criminalizing the receipt or shipment of child pornography requires that the accused have knowledge not only of the receipt or shipment but also of the fact that the

materials being received or shipped are child pornography.[8]  The Court

acknowledged that the most natural reading of the statute would require only a

knowing receipt or shipment of the package.  513 U.S. at 68.  However, the Court

reasoned that because the receipt of a package is "otherwise innocent conduct,"

Congress could not have intended to criminalize such conduct absent proof that

the recipient knew that the package contained child pornography.  Id. at 69-72.

In Staples, the Court held that a statute making it unlawful to possess an

unregistered machine gun requires the government to prove that the accused knew

the weapon that he or she possessed had the physical characteristics that brought

---

[8]The statute, 18 U.S.C. § 2252 (1994 & Supp. 1997), provides:
(a) Any person who--
>    (1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if--
>    >    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>    >    (B) such visual depiction is of such conduct;
>    (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if--
>    >    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>    >    (B) such visual depiction is of such conduct . . . ."

it within the statutory definition of a machine gun.  511 U.S. at 602.[9]  As in X-Citement Video, the Court reasoned that because "guns generally can be owned in perfect innocence," Congress would not have intended to criminalize the failure to register a weapon as a machine gun if an individual did not know that the gun was of a type that was required to be so registered.  Id. at 611-12.

Like the statute the Court considered in Staples, section 1326 does not, by its terms, contain a mens rea.  However, it is well-established that silence alone does not necessarily suggest that Congress intended to dispense with a mens rea element.  Staples, 511 U.S. at 605.  The Supreme Court has taken the view that in construing most statutory crimes an indication of Congressional intent, express or implied, is necessary to dispense with mens rea as an element of the crime. Id at 606.  At the same time, when the Court has considered "regulatory" statutes, it has "understood Congress to impose a form of strict liability . .  .  .  In construing such statutes, [the court has] inferred from silence that Congress did not intend to require proof of mens rea to establish an offense."  Id.

Courts have found the Immigration and Nationality Act, and specifically section 1326, to be a regulatory measure.  United States v. Hussein, 675 F.2d 114, 115 (6th Cir. 1982);  see also United States v. Hernandez, 693 F.2d 996, 1000

---

[9]26 U.S.C. § 5861 (1994) provides, in relevant part, "[i]t shall be unlawful for any person . . .  (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . ."  The statute includes "a machinegun" within the definition of "firearm." 26 U.S.C. § 5845(a)(6) (1994).

(10th Cir. 1982) (agreeing with the analysis and decision in the <u>Hussein</u> case). Such a finding indicates a presumption of strict liability.

Further, unlike the conduct proscribed in <u>X-Citement Video</u> and <u>Staples</u>, crossing international borders <u>is</u> a type of conduct "generally subject to stringent public regulation," <u>X-Citement Video</u>, 513 U.S. at 71. We considered an argument similar to the defendant's in <u>United States v. Capps</u>, 77 F.3d 350, 352 (10th Cir.), <u>cert. denied</u>, 116 S. Ct. 2568 (1996), where we held that <u>Staples</u> and <u>X-Citement Video</u> do not require the government to prove knowledge of felony status in a prosecution under the felon-in-possession statute, 18 U.S.C. 922(g) (1994 & Supp. 1997), because "a person convicted of a felony cannot reasonably expect to be free from regulation when possessing a firearm." <u>Capps</u>, 77 F.3d at 353. The argument is no more persuasive in this context.

Entering a country in violation of its immigration laws is not "otherwise innocent conduct." <u>See United States v. Meraz-Valeta</u>, 26 F.3d 992, 997 (10th Cir. 1994) ("Deported aliens are already aware that they are in violation of the law as evidenced by their surreptitious entry.") (quoting <u>United States v. Whittaker</u>, 999 F.2d 38, 42 (2d Cir. 1993)). <u>Cf. United States v. Cook</u>, 76 F.3d 596, 601 (4th Cir.), <u>cert. denied</u>, 117 S. Ct. 320 (1996) (distinguishing <u>X-Citement Video</u> and <u>Staples</u>, and holding that to obtain a conviction for receipt of drugs from a minor, 21 U.S.C. § 861(a)(3) (1994), the government need not prove

that defendant knew individual was a minor because "receiving illegal drugs is not otherwise innocent conduct").  Even in the absence of a prior deportation, Martinez's conduct in illegally reentering the country would subject him to prosecution under 8 U.S.C. § 1325(a) (1994 & Supp. 1997).[10]

In Staples and X-Citement Video the Court considered the harsh penalties attached to the crimes in attributing a mens rea to them.  Staples, 511 U.S. at 615-16;  X-Citement Video, 513 U.S at 72.  Martinez argues that since the penalty under section 1326 can reach 20 years,[11] we should interpret the statute as requiring a mens rea for each element.  This argument contains several flaws. First, harsh penalties are far more troubling where individuals lack notice that their conduct may be proscribed.  Second, the 20-year penalty to which Martinez refers is the penalty for reentering the country subsequent to a conviction for an aggravated felony. § 1326(b)(2).  The sentence prescribed under section 1326

---

[10]  Section 1325(a) provides:
> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

[11]  A defendant can be sentenced to up to twenty years for reentry after deportation after commission of an aggravated felony pursuant to § 1326(b)(2). Thus, the harshness of the penalty is not merely for reentering after deportation, but for the recidivism and dangerousness of the defendant.

when the defendant is not subject to a sentence enhancement for prior crimes is not more than 2 years. § 1326(a). Finally, requiring a mens rea for the status element of being a deportee would be inconsistent with our treatment of status elements in other crimes. See, e.g., Capps, 77 F.3d at 352 (the only knowledge required for a conviction under felon-in-possession statute, 18 U.S.C. 922(g)(1), is knowledge that instrument possessed is a firearm). Accord United States v. Langley, 62 F.3d 602, 607 (4th Cir. 1995), cert. denied, 116 S. Ct. 797 (1996) (rejecting argument that Staples and X-Citement Video require government to prove knowledge of felony status in prosecution under 922(g)(1)).

The greatest difficulty with Martinez's argument, however, is that the Supreme Court reiterated in Staples and X-Citement Video that the mens rea of a statutory crime is a question for the legislature and that a court's role in construing a statute is to discern Congressional intent. See, e.g., Staples, 511 U.S. at 604-05. This is precisely the approach we took in originally construing section 1326.

In United States v. Hernandez, 693 F.2d 996, 1000 (10th Cir. 1982), we adopted the reasoning of the Sixth Circuit in United States v. Hussein, 675 F.2d 114 (6th Cir. 1982), and held that under section 1326 the government need not prove that a defendant has the specific intent to enter the country illegally.[12] The

_____

[12] The Sixth Circuit, in turn, relied on the Ninth Circuit decision in Pena-

(continued...)

Hussein Court noted that the statute is a regulatory measure passed pursuant to Congress's plenary powers over aliens. 675 F.2d at 115. Reviewing the legislative history of the Act, the Court found "no evidence of Congressional intent to include an intent requirement." Id. Perhaps most persuasively, the Court noted that several other sections of the Act did include an intent requirement. "Given that the Act was the final product of a complete investigation . . . 'it would be absurd . . . to think that Congress inadvertently left intent out of section 1326.'" Id. (quoting Pena-Cabanillas, 394 F.2d at 790).

Section 1326 is a regulatory measure passed by Congress that does not proscribe "otherwise innocent conduct." A study of the text reveals that Congress did not intend to require an alien to know that he or she had been deported prior to illegal reentry into this country. Thus, we reaffirm our earlier holdings in Hernandez and Miranda-Enriquez that the only mens rea required under section 1326 is the intent to do the act of entering the country. Staples and X-Citement Video do not require otherwise.

## CONCLUSION

Finding no error in the district court's exclusion of evidence, or in the court's jury instructions, we affirm the defendant's conviction.

---

[12](...continued)
Cabanillas v. United States, 394 F.2d 785 (9th Cir. 1968).