**UNITED STATES of America, Plaintiff,**

v.

**Jorge MERAZ–VARGAS, a/k/a "George Meraz", Defendant.**

**No. 98–40057–01–SAC.**

United States District Court, D. Kansas.

Sept. 17, 1998.

Henry O. Boaten, Topeka, KS, for defendant.

Gregory G. Hough, Office of United States Attorney, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On May 28, 1998, the grand jury returned a one count indictment charging Jorge Meraz–Vargas, a native of Mexico who had previously been convicted of cannabis trafficking in violation of Illinois state law, and who was arrested and deported from the United States to Mexico, with knowingly entering the United States without the consent of the Attorney General of the United States for reapplication by the defendant for admission into the United States, in violation of 8 U.S.C. § 1326(a).

This case comes before the court upon the following pretrial motions filed by the defendant (represented by Henry O. Boaten):

1. **Motion for Inspection and Discovery (Dk.10);**[1]

---

1. This motion was originally referred to the magistrate but was never ruled upon.

## 2. Defendant's Motion to Dismiss (Dk.23).

The government has filed separate responses to each motion. *See* (Dk. 11 & 24).

## 1. Motion for Inspection and Discovery (Dk.10).

In violation of this court's *Criminal Procedural Guidelines,* the defendant has filed a laundry list of discovery requests without indicating that any attempt to mutually resolve this request was made prior to filing the motion. Although the court could summarily deny the defendant's motion for noncompliance with its *Guidelines,* in light of the government's response indicating that this is a full discovery matter, the defendant's motion is denied as moot.

## 2. Defendant's Motion to Dismiss (Dk.23).

In his motion to dismiss, the defendant acknowledges that he was "previously convicted and deported to Mexico." Meraz–Vargas contends that the immigration law judge improperly denied his requests for a continuance to locate counsel. As counsel was not appointed, Meraz–Vargas proceeded pro se and was ordered deported based upon his narcotics conviction. According to the defendant, he appealed the deportation order to the Board of Immigration, but "the board dismissed his appeal." Meraz–Vargas was deported to Mexico. The defendant's brief states that "[d]ue to the fact that he did not have counsel he was not advised that if he reentered the United States he [would] be incarcerated for 20 years; additionally that if he seeks to reenter the United States he would have to apply for permission from the United States Attorney General." Consequently, the defendant reentered the United States without the consent of the Attorney General.

In his motion, Meraz–Vargas argues that his deportation was fundamentally unfair in that the immigration law judge denied his request for a continuance to obtain legal counsel, even though he informed the judge that he had made arrangements for counsel, but that his attorney had not yet arrived due to misinformation from Meraz–Vargas' family concerning the time and location of the hearing. Under these circumstances, Meraz–

Vargas contends that it was fundamentally unfair for the immigration law judge to not grant a continuance. In support of his motion, the defendant relies heavily on the Supreme Court's decision in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

Because deportation is such a harsh sanction implicating an important liberty interest, Meraz–Vargas contends that it was fundamentally unfair to require him to proceed without the benefit of counsel. Meraz–Vargas suggests that this was particularly true in his case as he "had a job, a family consisting of a permanent resident spouse and three children who are United States citizens." Meraz–Vargas contends that had he been afforded the benefit of legal counsel, he might have been able to avoid involuntary deportation. Moreover, Meraz–Vargas contends that "counsel could have explained to the defendant that he should not come back to the United States, given that the consequence of coming back would be for defendant to face a 20 year jail sentence." In short, Meraz–Vargas contends that his due process rights were violated when the immigration judge denied his request for a continuance. Meraz–Vargas asks this court to enter an order dismissing the indictment because the "underlying deportation proceeding being used as an element in the charge or reentry was prejudicial to the defendant since by depriving the defendant of the right to assistance of counsel, defendant did not properly present his case."

The government responds, challenging the factual premise of the defendant's motion. The government has assembled a series of documents, including the transcripts from Meraz–Vargas' deportation hearings. The government contends that prior to the final deportation hearing on January 24, 1994, on two prior occasions—November 17, 1993 and December 8, 1993—the immigration judge had continued those hearings to afford the defendant an opportunity to obtain legal counsel. According to the government, at the final hearing, Meraz–Vargas told the immigration judge that the Legal Assistance Foundation had declined to accept his case and that he could not afford the services of a

private attorney. In fact, Meraz–Vargas' counsel did not enter an appearance until seven days after the final hearing. As the immigration judge was unaware that any attorney would enter his appearance, the judge committed no error in commencing the hearing.

In addition to challenging Meraz–Vargas' factual account of his deportation hearing, the government argues that he is procedurally barred from asserting an ineffective assistance of counsel claim in this proceeding as he has not sought to reopen his deportation case. Finally, the government argues that the defendant cannot show that he suffered any prejudice as a result of any of the purported due process violations.

### 8 U.S.C. § 1326

Title 8, § 1326 provides in pertinent:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter.

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;

(3) who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United States, or attempts to do so, shall be fined under Title 18, and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence;

or

(4) who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.

For the purposes of this subsection, the term "removal" includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law.

    (d) In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

"Under § 1326(a), the government must prove that (1) the defendant is an alien; (2) who was arrested and deported; and (3) thereafter voluntarily reentered, attempted to reenter, or was found in the United States; (4) without the permission of the Attorney General." *United States v. Meraz–Valeta,* 26 F.3d 992, 997 (10th Cir.1994) (*citing United States v. Miranda–Enriquez,* 842 F.2d 1211, 1212 (10th Cir.1988), *cert. denied,* 488 U.S. 836, 109 S.Ct. 100, 102 L.Ed.2d 75 (1988)). To obtain a conviction for violation of § 1326(a), the government is not required to prove that the defendant knew he was deported. *United States v. Martinez–Morel,* 118 F.3d 710, 713 (10th Cir.1997). The only intent the government must prove is the 'general intent to do the prohibited act, to-wit enter.' *Id.* (*quoting United States v. Miranda–Enriquez,* 842 F.2d 1211, 1212 (10th Cir.1988) (*quoting Pena–Cabanillas v. United States,* 394 F.2d 785, 790 (9th Cir.1968))).

## Collateral Attacks on Deportation Proceedings

The Supreme Court has held that when determinations made in the immigration hearing played a substantive role in the subsequent imposition of a criminal sanction, a meaningful review of the administrative proceeding must be provided. *United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2154–56, 95 L.Ed.2d 772 (1987). In *Mendoza–Lopez,* the Court held that where defects in the deportation proceeding have effectively foreclosed direct judicial review of the deportation order, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish deportation conclusively as an element of a § 1326 offense (illegal reentry into the United States after deportation). *Id.*

We undertake a two-part inquiry when determining whether deportation has been established for the purposes of a § 1326 conviction. We first examine whether the proceedings were fundamentally unfair, and second we determine whether the deportation hearing effectively foreclosed the defendant's right to a direct appeal. *Meraz–Valeta,* 26 F.3d at 998. In order to show fundamental unfairness, the defendant must demonstrate he was prejudiced.

*United States v. Aranda–Hernandez,* 95 F.3d 977, 980 (10th Cir.1996), *cert. denied,* 520 U.S. 1144, 117 S.Ct. 1314, 137 L.Ed.2d 477 (1997).

## Analysis

Neither party's brief even mentions that the 1996 amendments to § 1326 directly are implicated by Meraz–Vargas' collateral challenge to his deportation. During oral argument, counsel for the defendant attempted to demonstrate that his client could satisfy all of the requirements of § 1326(d).

A brief overview of the § 1326(d) appears in order. "On April 24, 1996 Congress enacted subsection (d) of § 1326. Subsection (d) sets forth requirements that a defendant must comply with before a defendant can successfully attack a prior deportation." *United States v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1088 n. 5 (S.D.Cal.1998). "Section 1326(d) codified the scope of collateral attack on deportation orders in a § 1326 prosecution authorized in *Mendoza–Lopez.*" *United States v. Fermin–Rodriguez,* 5 F.Supp.2d 157, 161 (S.D.N.Y.1998). "This new subsection strictly limits the circumstances in which an alien can attack, during a prosecution under § 1326, the lawfulness of the prior deportation." *United States v. Pantoja–Valderama,* No.Crim. 97–2050–R, 1997 WL 856119, *2 (S.D.Cal. Nov.24, 1997). Specifically, newly added § 1326(d) provides:

(d) In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

"Because section 1326(d) is stated in the conjunctive, a defendant must satisfy all three provisions before he may wage a collateral attack." *United States v. Sanchez–Per-*

*alta*, No. 97 CR. 536(LAP), 1998 WL 63405, *2 (S.D.N.Y. Feb.13, 1998).

█ Despite the defendant's efforts, the court finds that he has not satisfied the requirements of § 1326(d). Having reviewed the records regarding the defendant's deportation hearing and subsequent appeal, and assuming *arguendo* that the defendant has exhausted his administrative remedies,[2] the court does not believe that the defendant can establish either fundamental unfairness or that he suffered any prejudice. At the outset it should be noted that unlike the mass deportation hearing decried by the Supreme Court in *Mendoza–Lopez*, in this case the hearing conducted by the immigration judge concerned only Meraz–Vargas' deportation. The record demonstrates that the proceeding was conducted in a reasonable and appropriate manner. The record indicates that the proceedings were translated into Spanish by an interpreter—ostensibly for Meraz–Vargas' benefit. The record also indicates that the immigration judge carefully explained the basis of his decision to deport the defen-

dant and specifically informed the defendant of his right to appeal his decision. The immigration judge also indicated that he would provide Meraz–Vargas with the appropriate appeal forms. At the conclusion of the hearing, the immigration judge explained that if no appeal was taken, his decision would be final. As a result of his decision, the immigration judge informed Meraz–Vargas that he would be deported to Mexico. The immigration judge also informed Meraz–Vargas that "there are also substantial criminal sanctions for returning to the United States after deportation." Meraz–Vargas responded "I understand."

As to his claim that the immigration judge should have continued the final deportation hearing to afford him the opportunity to obtain legal counsel, the defendant's brief omits the fact that his deportation hearing was continued on two prior occasions before the third and final hearing. At the final hearing Meraz–Vargas told the immigration judge that after the second hearing was con-

**2.** The government correctly notes that the Tenth Circuit has held, in the context of reviewing orders of deportation from the Board of Immigration Appeals (BIA), that a defendant asserting an ineffective assistance of counsel claim must first present that claim to the BIA:

A claim of ineffective assistance of counsel in a deportation proceeding is based on the Fifth Amendment guarantee of due process. *See Michelson v. INS*, 897 F.2d 465, 467 (10th Cir.1990) (deportation proceedings are civil in nature, and, therefore, do not give rise to a Sixth Amendment right to counsel). "To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show not only ineffective representation, but also prejudice to him which occurred as a result of that ineffectiveness." *Figeroa v. United States INS*, 886 F.2d 76, 78 (4th Cir.1989) (citations omitted). The prejudice must be sufficient to "implicate[ ] the fundamental fairness of the proceeding." *Michelson*, 897 F.2d at 468. The BIA permits an alien to seek reopening of administrative proceedings when his counsel's incompetence has prevented him from reasonably presenting his case. *See, e.g., In re N–K–, Interim Dec. 3312*, 1997 WL 123906 (BIA Mar. 13, 1997); *In re Lozada*, 19 I. & N. Dec. 637, *aff'd* 857 F.2d 10 (1st Cir. 1988). Although the Second Circuit has held that failure to raise an ineffective assistance of counsel claim before the BIA does not deprive a court of jurisdiction to hear a claim, *Rabiu v. INS*, 41 F.3d 879, 881–82 (2d Cir.1994), that is not the law in this circuit. Because the BIA

provides an administrative mechanism for hearing claims of ineffective assistance of counsel such as those raised here, we have held that a failure to raise a claim of ineffective assistance to the BIA deprives the reviewing court of jurisdiction to hear the claim. *Nguyen v. INS*, 991 F.2d 621, 623 n. 3 (10th Cir.1993). *Accord Rashtabadi*, 23 F.3d at 1567 (concerning claim that attorney admitted deportability without alien's consent); *Castaneda–Suarez v. INS*, 993 F.2d 142, 144–45 (7th Cir.1993) (concerning claim that attorney failed to file application for discretionary relief, failed to submit brief in support of appeal to Board, and failed to seek reopening before Board); *Dokic v. INS*, 899 F.2d 530, 531–32 (6th Cir.1990). *Naranjo–Castillo v. Immigration & Naturalization Service*, 145 F.3d 1346 (10th Cir.1998) (Table; available on Westlaw at 1998 WL 243700).

Although the Tenth Circuit has consistently imposed this exhaustion of remedies requirement in direct appeals from BIA decisions, the court did not find, nor has the government identified, a criminal case (*i.e.*, a challenge to the fundamental fairness of the deportation proceeding which serves as an element to a § 1326 charge) in which the Tenth Circuit has imposed this same exhaustion requirement. If the Tenth Circuit would apply this same exhaustion requirement in a criminal prosecution, to the extent that the defendant's motion to dismiss asserts an "ineffective assistance of counsel" claim, it would necessarily fail as he has never previously presented an "ineffective assistance of counsel" claim to the BIA.

tinued "my family has been trying to avail me the attorney but I couldn't get in touch with him so—uh—I don't know what happened. It seems—it seems like they—they didn't get it." Meraz–Vargas also told the immigration judge that the Legal Assistance Foundation in Chicago would not take his case. Based upon the facts available to the immigration judge at the time of the final hearing, that judge's decision to proceed without further delay on the third occasion was not an abuse of discretion. *See Omuso v. Immigration & Naturalization Service*, 28 F.3d 113 (10th Cir. May 27, 1994) (Table; available on Westlaw at 228228) (immigration judge did not abuse his discretion in denying defendant's request for second continuance as record was "clear that petitioner has ample time to attempt to obtain counsel and to prepare for his deportation proceeding"), *cert. denied*, 514 U.S. 1023, 115 S.Ct. 1372, 131 L.Ed.2d 227 (1995); *Dike v. Immigration & Naturalization Service*, 999 F.2d 547, 1993 WL 261878 (10th Cir.1993) (Table).[3]

Finally, the defendant's motion fails to recognize that after the immigration judge's decision, an attorney did enter an appearance on his behalf and that his attorney filed a notice of appeal to the Board of Immigration Appeals to challenge the immigration judge's decision to proceed with the final deportation hearing in the absence of counsel. On May 31, 1994, the Board of Immigration Appeals dismissed the defendant's appeal, finding the immigration judge's order of deportation appropriate, specifically rejecting the defendant's claim that the immigration judge abused his discretion in not granting a third continuance. Although not challenged by Meraz–Vargas, the BIA nevertheless reaffirmed the immigration judge's determination that Meraz–Vargas was deportable. The BIA also opined that "[t]he immigration judge also properly determined that the respondent is not eligible for other relief." Following the BIA's opinion, Meraz–Vargas, who apparently still had the benefit of retained counsel, simply chose not to seek judicial review of his deportation following his administrative appeal with the court of appeals.[4] Under these circumstance, the defendant cannot demonstrate that his deportation was the product of a fundamentally unfair proceeding or that he was denied either administrative or judicial review of the immigration judge's order of deportation. Nor can the defendant demonstrate that he suffered any prejudice from the purported errors in the deportation process.

Based upon these findings, the court denies the defendant's motion to dismiss.

IT IS THEREFORE ORDERED that the defendant's Motion for Inspection and Discovery (Dk.10) is denied as moot.

IT IS FURTHER ORDERED that the Defendant's Motion to Dismiss (Dk.23) is denied.

---

3. In *Dike*, the Tenth Circuit stated:

> The IJ [immigration judge] has the discretion to grant an alien continuances to obtain counsel. 8 C.F.R. § 242.13. Whether that discretion has been abused must be determined by the circumstances of the case, particularly considering the reasons given to the IJ at the hearing. *Rios–Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985) (*which quoted Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).
>
> Over a period of approximately a month and a half, the IJ granted petitioner three continuances to obtain counsel. After the third one, petitioner stated he had found counsel, but counsel could not attend the scheduled hearing. The IJ stated that if counsel had entered an appearance, he would consider granting a further continuance. Because counsel had

not, the IJ refused to grant any further continuances. Under the circumstances, the IJ did not abuse his discretion.
1993 WL 261878, at *1.

4. At the time of Meraz–Vargas' deportation, under 8 U.S.C. § 1105a, review of final orders of deportation was vested exclusively in the courts of appeals. *Younus v. Immigration and Naturalization Service*, No. 91—1192–C, 1992 WL 190705 (D.Kan. July 6, 1992). "8 U.S.C. § 1105a(a) was subsequently repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA'), Pub.L. No. 104–208, 110 Stat. 3009, enacted by Congress in September 1996. Provisions relating to judicial review of immigration orders filed after enactment of IIRIRA now appear at 8 U.S.C. § 1252, as amended by IIRIRA." *Fernandez v. I.N.S.*, 113 F.3d 1151, 1153 n. 2 (10th Cir.1997).