**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CLARO RIVERA-NEVAREZ,

Defendant-Appellant.

No. 04-3164

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 03-CR-10190-MLB)**

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the brief), Wichita, Kansas, for Defendant-Appellant.

Leon J. Patton, Assistant United States Attorney (Eric F. Melgren, United States Attorney, Brent I. Anderson, Assistant United States Attorney, on the brief), Wichita, Kansas, for Plaintiff-Appellee.

Before **LUCERO**, **MURPHY**, and **McCONNELL**, Circuit Judges.

**MURPHY,** Circuit Judge.

## I.   INTRODUCTION

Claro Rivera-Nevarez was charged in United States District Court for the District of Kansas with illegal reentry into the United States after removal, in violation of 8 U.S.C. § 1326(a) and (b)(1).  Rivera-Nevarez moved to dismiss the indictment on the ground that subsequent Board of Immigration Appeals ("BIA") and Tenth Circuit precedent rendered invalid the 1999 removal order on which the illegal reentry charge was based.  The district court denied the motion, and Rivera-Nevarez then pleaded guilty with a reservation of his right to appeal.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.  Because Rivera-Nevarez fails to demonstrate that he fulfills the prerequisites for a collateral challenge to his 1999 removal order, this court **affirms** his conviction for illegal reentry.

## II.   BACKGROUND

Rivera-Nevarez, a citizen of Mexico, was convicted of felony driving under the influence ("DUI") in Texas in 1997.  As a direct result, he was removed from the United States in February 1999.[1]  At that time the BIA classified DUI as a "crime of violence" under 18 U.S.C. § 16, and therefore an "aggravated felony"

---

[1] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, changed the terminology for removal of resident aliens, replacing the term "deportation" with "removal."  *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1140 n.2 (10th Cir. 1999).

mandating removal under the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). *See In re Magallanes-Garcia*, 22 I. & N. Dec. 1, 5, 1998 WL 133301 (BIA 1998).[2] On October 9, 2003, Rivera-Nevarez was found and arrested in Kansas without having sought or obtained permission to reapply for admission into the United States.

Charged with unlawful reentry into the United States after removal under 8 U.S.C. § 1326(a) and (b)(1), Rivera-Nevarez moved to dismiss the indictment. He argued that subsequent interpretations by the Tenth Circuit in *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204-06 (10th Cir. 2003), and the BIA in *In Re Ramos*, 23 I. & N. Dec. 336, 347, 2002 WL 1001049 (BIA 2002) (en banc), established that drunk driving was not a "crime of violence" or "aggravated felony" under the INA, and that his 1999 removal on that basis was therefore invalid. The district court denied the motion, writing that "[r]etroactivity of

---

[2]The INA defines "aggravated felony" to include "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). The term "crime of violence" is in turn defined as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

judicial rulings is a complicated subject which defendant has not addressed in any fashion." The court concluded that Rivera-Nevarez's "deportation was valid under then-existing law as interpreted by the Board of Immigration Appeals and . . . the Tenth Circuit."[3]

In his motion for reconsideration of that ruling, Rivera-Nevarez argued that under the Supreme Court's holding in *United States v. Mendoza-Lopez* a defendant being criminally prosecuted under 8 U.S.C. § 1326 could collaterally attack the prior removal order if the removal hearing was fundamentally unfair and the defendant was denied the right to appeal. 481 U.S. 828, 841-42 (1987). He further argued, for the first time, that he satisfied the prerequisites for a collateral attack on his removal order established by 8 U.S.C. § 1326(d), because the BIA's decision in *Magallanes-Garcia* and the general legal climate at the time of his removal hearing in 1999 rendered any attempt to appeal the removal order futile. In a second written order, the district court responded that "a motion for reconsideration does not provide an occasion to reargue the original motion or to present additional arguments which could have been submitted with it." The court therefore "decline[d] to reconsider its order."

---

[3]The district court's order included no discussion of the prerequisites established by 8 U.S.C. § 1326(d) for a collateral challenge to a prior removal order, presumably because Rivera-Nevarez did not argue in his motion that he satisfied those prerequisites.

Rivera-Nevarez subsequently entered into a plea agreement with the government, which allowed him to plead guilty to the offense and reserve the right to appeal "those issues raised in his Motion to Dismiss and Motion to Reconsider." The district court accepted the conditional guilty plea and sentenced Rivera-Nevarez to 21 months' imprisonment. This appeal ensued.

On November 9, 2004, the Supreme Court announced its decision in *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004). The Court had granted certiorari in *Leocal* to resolve a conflict among the circuits on the question whether DUI offenses that do not have a mens rea component or require only a showing of negligence in the operation of a vehicle qualify as a crime of violence. *Id.* at 380.[4] In *Leocal*, the Court held that such DUI offenses are not crimes of violence under 18 U.S.C. § 16, and therefore are not "aggravated felonies" under the INA. *Id.* at 383.

## III. DISCUSSION

### A. Retroactive Applicability of *Lucio-Lucio* and *Leocal*

In denying Rivera-Nevarez's motion to dismiss the indictment, the district court concluded that the BIA's decision in *Ramos* and this court's decision in *Lucio-Lucio* were not retroactively applicable and that the removal was therefore

---

[4] Among the cases cited by the Supreme Court was the Fifth Circuit case, *United States v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001), in which the court held that the Texas felony driving while intoxicated statute was not a crime of violence within the meaning of 18 U.S.C. § 16(b). *Leocal v. Ashcroft*, 125 S. Ct. 377, 380 (2004).

valid at the time it occurred. Subsequently, the Supreme Court's decision in *Leocal* has conclusively established that DUI is not a "crime of violence" under the INA. 125 S. Ct. at 383. Because *Leocal* involves a question of statutory construction, its holding is retroactively applicable to the time of Rivera-Nevarez's removal hearing. Decisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant. *See Rivers v. Roadway Express Inc.*, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). For this reason, *Leocal* provides the correct interpretation of the law as it stood in 1999 when Rivera-Nevarez was deported. *See United States v. Shelton*, 848 F.2d 1485, 1489-90 (10th Cir. 1988) (en banc). The district court's conclusion that Rivera-Nevarez's removal was valid at the time it occurred was therefore in error.

**B.     Section 1326(d) and Collateral Review of the Removal Order**

Although the district court erred in its conclusion that the rule announced in *Ramos* and *Lucio-Lucio* was not retroactively applicable to the removal proceeding, Rivera-Nevarez nevertheless cannot collaterally challenge his removal unless he can establish that he meets the statutory prerequisites for a collateral attack set forth in 8 U.S.C. § 1326(d). *See United States v.*

*Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998). Because Rivera-Nevarez fails to demonstrate that the statutory requirements for a collateral attack are satisfied, this court concludes that he cannot challenge his removal in this criminal prosecution. The district court's error was therefore harmless.

Section 1326 criminalizes reentry into the United States after removal without obtaining advance consent from the Attorney General. 8 U.S.C. § 1326(a). The language of the statute as originally enacted included no exception for cases in which the original removal order was unlawful. *See Mendoza-Lopez*, 481 U.S. at 835. The statute provided simply that any alien who "has been . . . deported" will be guilty of a felony if the alien thereafter enters the United States. *See id* at 835-37 (concluding that Congress did not intend criminal liability under § 1326 to depend on the validity of the underlying deportation order).

In *Mendoza-Lopez*, however, the Supreme Court held that when an administrative removal proceeding plays a critical role in the subsequent imposition of a criminal sanction, the proceeding must be conducted in accordance with due process and "there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-838; *see also United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc). *Mendoza-Lopez* distinguished the Court's earlier opinion in *Lewis v. United States*, in which the

Court held that Congress could define the "class of persons who should be disabled from dealing in or possessing firearms" by reference to prior state felony convictions, even if those convictions had been obtained in proceedings where the defendant was deprived of counsel in violation of the Sixth Amendment. *Lewis*, 445 U.S. 55, 67-68 (1980). The Court in *Lewis* noted that convicted felons had access to procedures by which they could judicially challenge the validity of their convictions prior to obtaining firearms. *Id.* at 67. In contrast, the Court in *Mendoza-Lopez* concluded that the defendant was deprived of the opportunity to judicially challenge the deportation order because he was not adequately informed of his right to appeal. *Mendoza-Lopez*, 481 U.S. at 839-40. The Court wrote that "[i]t is precisely the unavailability of effective judicial review of the administrative determination at issue here that sets this case apart from *Lewis*." *Id.* at 841.

In response to *Mendoza-Lopez*, Congress enacted § 1326(d), which establishes three requirements that an alien must satisfy in order to collaterally challenge a removal proceeding as a defense to a criminal prosecution for illegal reentry. *See United States v. Sandoval*, 390 F.3d 1294, 1298-99 & 1299 n.3 (10th Cir. 2004). Section 1326(d) requires the alien to demonstrate that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;

and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). This court has held that § 1326(d) comports with the constitutional standard for due process set forth in *Mendoza-Lopez*. *Wittgenstein*, 163 F.3d at 1170.

Under both § 1326(d) and *Mendoza-Lopez*, a criminal defendant challenging a prior removal order must show not only that the removal proceeding was fundamentally unfair, but also that the defendant was improperly deprived of the opportunity for judicial review. 8 U.S.C. § 1326(d)(2)-(3); *Mendoza-Lopez*, 481 U.S. at 838 ("[W]here the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense."); *Wittgenstein*, 163 F.3d at 1170 ("A defendant may collaterally challenge a deportation hearing in a 8 U.S.C. § 1326 prosecution if the defendant can show that the deportation hearing was fundamentally unfair *and* deprived the alien to the right of judicial review." (quotation omitted)); *see also Aguirre-Tello*, 353 F.3d at 1204. As this court wrote in *United States v. Aranda-Hernandez*: "The right to judicial review does not establish a right to an error-free immigration hearing. It grants a right to appeal if the immigration judge errs in construing the law or facts of the case." 95 F.3d 977, 981 (10th Cir. 1996).

Assuming, without deciding, that Rivera-Nevarez can demonstrate that his removal proceeding was fundamentally unfair and that he properly exhausted any administrative remedies, he nevertheless fails to meet his burden under § 1326(d)(2) to show that he was deprived of the opportunity for judicial review. The prior removal proceeding is afforded a presumption of regularity, and the defendant has the burden of showing that he was deprived of his right to appeal. *Aguirre-Tello*, 353 F.3d at 1204. Rivera-Nevarez notes that, at the time of his removal hearing, jurisdiction-stripping provisions in IIRIRA precluded direct appeal of "any final order of removal against an alien who is removable by reason of having committed a criminal offense [including an aggravated felony]." 8 U.S.C. § 1252(a)(2)(C). Because § 1252(a)(2)(C), as applied under the law as it stood in 1999, appeared to preclude any right to appellate review of the removal order, Rivera-Nevarez argues that the requirement of § 1326(d)(2) is satisfied.

Although Rivera-Nevarez is correct that § 1252(a)(2)(C) precluded appellate review of removal orders based on an alien's commission of a crime of violence, it did not preclude courts from reviewing the threshold question of which particular crimes constitute crimes of violence under the INA. The Fifth Circuit, from which Rivera-Nevarez was removed, held in February 2000 that although IIRIRA stripped federal courts of jurisdiction for direct review, the courts retain jurisdiction to determine whether the specific conditions that bar

-10-

jurisdiction exist.  *Max-George v. Reno*, 205 F.3d 194, 199 (5th Cir. 2000),

*vacated on other grounds sub nom. Max-George v. Ashcroft*, 533 U.S. 945

(2001).[5]  Rivera-Nevarez therefore could have appealed to the Fifth Circuit on the

question whether DUI constituted a crime of violence within the meaning of the

INA.  *See, e.g.*, *United States v. Chapa-Garza*, 243 F.3d 921, 924-27 (5th Cir.

2001).

*Max-George* had not been decided at the time of Rivera-Nevarez's removal

hearing in 1999, but the Fifth Circuit at that time had construed the INA's very

similar transitional jurisdiction-stripping provision, 8 U.S.C. § 1105a(10), in the

same manner.  *Okoro v. INS*, 125 F.3d 920, 925 & n.10 (5th Cir. 1997).[6]  In

*Okoro v. INS*, the Fifth Circuit interpreted § 1105a(10) to leave the court with

jurisdiction to review the question whether the underlying offense leading to

removal was one of the offenses for which judicial review was precluded by the

statute.  *Id.* (noting that a court has jurisdiction to determine whether it has

jurisdiction).  Other circuits had reached the same conclusion by the time of

[5]In January 2001, this court agreed with the Fifth Circuit's conclusion in
*Max-George* that federal courts retain jurisdiction to determine whether the
jurisdictional bar under § 1252(a)(2)(C) applies.  *Tapia-Garcia v. INS*, 237 F.3d
1216, 1220 (10th Cir. 2001).

[6]The transitional provision stated that "[a]ny final order of deportation
against an alien who is deportable by reason of having committed [enumerated
criminal offenses] shall not be subject to review by any court."  8 U.S.C.
§ 1105a(10) (repealed 1996).

-11-

Rivera-Nevarez's removal. *See, e.g., Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997). In addition, the Eleventh Circuit in *Richardson v. Reno* had found 8 U.S.C. § 1252(a)(2)(C), the same statutory provision at issue here, to allow for judicial review over the question whether the predicate offense was included within the jurisdiction-stripping statute. 162 F.3d 1338, 1375-76 (11th Cir. 1998), *vacated on other grounds*, 526 U.S. 1142 (1999).[7]

The precise question of whether DUI constituted a crime of violence and therefore an aggravated felony under the INA had not yet been decided by the Fifth Circuit at the time of Rivera-Nevarez's removal hearing. Several circuits, however, had suggested in dicta that DUI was not a crime of violence. *See United States v. Parson*, 955 F.2d 858, 864-66 (3d Cir. 1992) (contrasting the definition of "crime of violence" under 18 U.S.C. § 16, the definition at issue here, with the relatively broader definition of the phrase under the United States Sentencing Guidelines); *see also United States v. Rutherford*, 54 F.3d 370, 372-74, 374 n.11, 377 (7th Cir. 1995); *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992). In March 2001 the Fifth Circuit ultimately agreed that the Texas felony DUI offense was not a crime of violence for purposes of the INA. *Chapa-Garza*, 243 F.3d at

---

[7]This court reached the opposite result regarding IIRIRA's temporary jurisdiction-stripping provision in *Berehe v. INS*, 114 F.3d 159, 161-62 (10th Cir. 1997). In *Tapia-Garcia*, however, this court distinguished *Berehe* and concluded that IIRIRA's *permanent* provision left the court with jurisdiction to determine whether it had jurisdiction to hear an appeal. 237 F.3d at 1220.

926-27; *accord Leocal*, 125 S. Ct. at 383.[8]  The fact that this was still an open

question in the Fifth Circuit at the time of Rivera-Nevarez's removal hearing in

February 1999, while adding some uncertainty to his chances of prevailing on

appeal, cannot be said to have effectively eliminated his right to obtain judicial

review.[9]

Rivera-Nevarez also briefly contends, without citation to the record, that he

was not informed at the removal proceeding of his right to "relief."  Presuming

that by the term "relief" he means judicial review, this argument fails to satisfy

---

[8]In September 1999, the Fifth Circuit held that the Texas felony DUI statute was a crime of violence under the INA, and therefore that the jurisdictional bar applied.  *Camacho-Marroquin v. INS*, 188 F.3d 649 (5th Cir. 1999), *withdrawn,* 222 F.3d 1040 (5th Cir. 2000).  This opinion was withdrawn in July 2000, and in *Chapa-Garza* the court ultimately came to the opposite conclusion.  243 F.3d at 926-27.

[9]Other courts have suggested that an alien's right to file a petition for habeas corpus in federal district court is sufficient to satisfy the § 1326(d)(2) judicial review requirement.  *See, e.g.*, *United States v. Copeland*, 376 F.3d 61, 67-68 (2d Cir. 2004); *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003).  Although the Fifth Circuit in *Max-George v. Reno*, 205 F.3d 194, 198 (5th Cir. 2000), held that IIRIRA's jurisdiction-stripping provisions precluded habeas relief in addition to direct review, at the time of Rivera-Nevarez's removal proceeding Fifth Circuit law still held that the transitional provisions of IIRIRA and AEDPA did not completely eliminate habeas review.  *See Lerma de Garcia v. INS*, 141 F.3d 215, 217 (5th Cir. 1998); *see also United States v. Torres*, 383 F.3d 92, 101 n.7 (3d Cir. 2004) (concluding that Fifth Circuit law in 1998 did not preclude habeas relief).  The availability of habeas review of removal orders was confirmed by the Supreme Court in *INS v. St. Cyr*, 533 U.S. 289, 312-13 (2001).  Because we conclude that Rivera-Nevarez could have directly appealed his removal order, we need not decide whether habeas relief would have been available to Rivera-Nevarez in 1999, and whether the availability of this form of judicial review would satisfy the requirement of § 1326(d)(2).

-13-

Rivera-Nevarez's burden under § 1326(d)(2). Attached to Rivera-Nevarez's brief is a copy of a "Notice to Appear" signed by Rivera-Nevarez and notifying him of his right to appeal an adverse decision by the immigration judge. Also attached is an order by the immigration judge noting that appeal was waived. There is no indication in the record that the notice was insufficient or that the waiver was otherwise inadequate. *See United States v. Rangel de Aguilar*, 308 F.3d 1134, 1139 (10th Cir. 2002) (rejecting an alien's challenge to the validity of a waiver of appeal when the alien presented no evidence that the waiver was invalid). Nor did Rivera-Nevarez ever request the opportunity to introduce evidence to this effect in the district court. *See Sandoval*, 390 F.3d at 1301 ("Generally speaking, an evidentiary hearing is not required unless the requesting party shows that he will produce relevant evidence."). In the absence of evidence to the contrary, this court cannot presume that the removal hearing improperly precluded Rivera-Nevarez's right to judicial review. *See United States v. Arevalo-Tavares*, 210 F.3d 1198, 1200-01 (10th Cir. 2000).

Because Rivera-Neverez has failed to demonstrate that he satisfied the requirements of § 1326(d) by showing that he was deprived of the opportunity for direct review of his removal order, collateral review of the order in this criminal prosecution is precluded. *See Aranda-Hernandez*, 95 F.3d at 981 (holding that this court will not collaterally review error in a removal hearing when an alien has

waived direct review of the error in the court of appeals). The district court's error in denying the motion to dismiss was therefore harmless.

### C.    Rule 11(a)(2)

The dissent reads Federal Rule of Criminal Procedure 11(a)(2) to mandate a *per se* rule of reversal for cases where a district court, while reaching the correct result, relies on erroneous reasoning in deciding an issue reserved for appeal as part of a conditional plea agreement.[10] This rule would apparently apply regardless of whether the defendant must inevitably lose in the district court on other grounds. Under the dissent's interpretation, any error committed by the district court and appealed by the defendant pursuant to Rule 11(a)(2), regardless of whether harmless or irrelevant, would constitute grounds for withdrawal of a plea. The dissent would therefore remand this case because the district court erred on the question of the retroactivity of *Lucio-Lucio*, without a discussion of whether § 1326(d) would even have allowed Rivera-Nevarez to make the retroactivity argument in the first place.

---

[10]Rule 11(a)(2) states:

**Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

Fed. R. Crim. P. 11(a)(2).

As an initial matter, the dissent is wrong in its view that the terms of the plea agreement itself restrict this court from considering the requirements of § 1326(d). Rivera-Nevarez reserved the right "to appeal . . . those issues raised in his Motion to Dismiss and Motion to Reconsider." Although Rivera-Nevarez did not discuss § 1326(d) in his initial motion to dismiss, he did address the requirements of the statute in his motion to reconsider, which was expressly included among the issues reserved for appeal in his plea agreement. Furthermore, both Rivera-Nevarez and the government verified that § 1326(d) issues were reserved for appeal by presenting extensive arguments thereon in their respective appellate briefs. In this context, the dissent's citation to the statement of issues in Rivera-Nevarez's brief is not a persuasive basis upon which to limit this court's authority to decide relevant issues.[11]

In spite of the language in the plea agreement indicating that § 1326(d) was at issue on appeal, the dissent would nevertheless refuse to consider the issue

---

[11]The fact that the motion to reconsider was included among the issues reserved for appeal answers the dissent's argument that this court's resolution of the case violates Rivera-Nevarez's due process right to be convicted only on the basis of a knowing and intelligent plea. Even barring a consideration of the motion to reconsider, the government's argument in response to the original motion to dismiss that § 1326(d) barred a collateral challenge to the removal order should have been sufficient to put Rivera-Nevarez on notice that the issue would be at play on appeal.

-16-

because the district court resolved the case on other grounds.[12] We do not, however, share the dissent's reading of Rule 11(a)(2) to allow for Rivera-Nevarez to withdraw his guilty plea if the district court is found to have committed an error of law that has no effect on the outcome of the case. Rivera-Nevarez reserved only the right to "appeal." He has now exercised his right, and we have found the decision of the district court to be correct.[13] Given that the district court reached the correct result in this case, it is irrelevant whether any particular reasoning within the court's written orders is faulty. *Cf. Herb v. Pitcairn*, 324 U.S. 117, 126 (1945) ("[O]ur power is to correct wrong judgments, not to revise opinions.").

The dissent's extraordinary interpretation of Rule 11(a)(2) is unprecedented

---

[12]We note that the dissent's argument was never raised by the defendant. The defendant's briefing on the question of § 1326(d)(2) was limited to his contention that he satisfied his burden under the statute because "any attempt . . . to contest [the immigration judge's] decision would have been futile in the [legal] climate that existed in 1999," a contention that we have fully considered and rejected. *See* Part III.B, *supra*. Rivera-Nevarez's counsel did request at oral argument that we remand to the district court if we concluded that the district court erred in its retroactivity analysis, but issues raised for the first time at oral argument are waived. *Durham v. Xerox Corp.*, 18 F.3d 836, 841 n.4 (10th Cir. 1994).

[13]Rule 11(a)(2) allows for withdrawal of a plea only for a defendant "who *prevails* on appeal." Fed. R. Crim. P. 11(a)(2) (emphasis added). There is no reason to believe that a party appealing pursuant to Rule 11(a)(2) is exempt from Rule 52(a)'s requirement that "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a); *see* Fed. R. Crim. P. 11(a)(2) advisory committee's note to 1983 amendments (discussing the role of harmless error under Rule 11(a)(2)).

in the history of this court. It is a fundamental and long-accepted feature of appellate review that a court of appeals may "affirm the rulings of the lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning." *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 521 F.2d 465, 472-73 (10th Cir. 1975). As early as 1937, this rule was considered "inveterate and certain." *Morley Constr. Co. v. Md. Cas. Co.*, 300 U.S. 185, 191 (1937); *see Jaffke v. Dunham*, 352 U.S. 280, 308-09 (1957); *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). This historical principle is supported by the consistent practice of this court, even in cases appealed in accordance with Rule 11(a)(2). *See, e.g.*, *United States v. Cusumano*, 83 F.3d 1247, 1248, 1249-50 (10th Cir. 1996) (en banc) (affirming the denial of a suppression motion in a Rule 11(a)(2) appeal on grounds other than those relied on by the district court). In light of this court's long-established views, it is not surprising that the dissent cites no authority in support of its novel interpretation of Rule 11(a)(2).[14]

---

[14]The dissent's citation to *United States v. Leake*, 95 F.3d 409 (6th Cir. 1996), is inapposite. In that case, the Sixth Circuit determined that the district court erred in denying the defendant's motion to suppress because the motion should have been granted in part and denied in part. *Id.* at 420. The court concluded that the district court's error was prejudicial to the defendant because the partial grant of the motion would have resulted in "excluding what appears to be the most damning evidence" in the case. *Id.* The court was careful to note, however, that not all defendants who succeed in achieving partial suppression of

(continued...)

-18-

Even if the dissent were correct that this court could not resolve the case on any grounds not decided by the district court, the fault for the district court's failure to address the § 1326(d) issue lies entirely with Rivera-Nevarez. The only reason the district court did not reach the question was because it was never raised in Rivera-Nevarez's motion to dismiss. The district court, in the absence of argument on the permissibility of a collateral attack, understandably focused solely on Rivera-Nevarez's assertion that *Lucio-Lucio* should be applied retroactively to the removal hearing. The irony of the dissent's approach is that, having neglected to argue an essential prerequisite to his collateral attack on the removal order, Rivera-Nevarez would now be rewarded for the district court's

---

[14](...continued)
evidence on appeal are entitled to withdraw their conditional guilty pleas. *Id.* at 420 n.21. Rather, whether a defendant should be allowed to do so would depend on "an examination of the degree of success and the probability that the excluded evidence would have had a material effect on the defendant's decision to plead guilty." *Id.* In contrast to *Leake*, the district court in this case reached the correct result, and the erroneous reasoning in the court's written order resulted in no prejudice to Rivera-Nevarez.

The dissent's citation to *United States v. Mejia*, 69 F.3d 309 (9th Cir. 1995), misses the mark for the same reason. *Mejia* noted only that when a defendant appeals the district court's denial of two separate suppression orders, reversal of either one of the orders warrants a withdrawal of the plea agreement if the denial of that order prejudiced the defendant. *Id.* at 316 n.8. The other case cited by the dissent, *United States v. Tantalo*, involved a similar situation in which the district court reached an erroneous and prejudicial result on one of two issues appealed. 680 F.2d 903, 911 (2d Cir. 1982). Neither of these cases have anything to say about whether a court of appeals can affirm a district court on alternate grounds when the district court's ultimate decision is correct.

-19-

failure to rule on the issue.  We cannot accept such a result.

## IV.  CONCLUSION

For the foregoing reasons, Rivera-Nevarez's conviction is **AFFIRMED**.

04-3164, <u>United States v. Rivera-Nevarez</u>, (Lucero, J., dissenting)

Because the majority fails to respect Federal Rule of Criminal Procedure 11(a)(2) and misapplies the harmless error doctrine, I respectfully dissent.

In 1999, Rivera-Nevarez, a seventeen-year legal permanent resident, was removed from the United States based on a drunk driving conviction two years earlier. In October 2003, Rivera-Nevarez returned to the United States, was apprehended, and was charged with illegal reentry. Two weeks after his apprehension, our circuit handed down its decision in <u>United States v. Lucio-Lucio</u>, 347 F.3d 1202 (10th Cir. 2003), ruling that drunk driving is not a "crime of violence" or an "aggravated felony." In support of the motion to dismiss, the defendant relied on <u>Lucio-Lucio</u> to collaterally attack the use of his 1999 removal to establish an element in his illegal reentry prosecution. Rivera-Nevarez claimed that his removal was fundamentally unfair because <u>Lucio-Lucio</u> applied retroactively, invalidating his 1999 removal. The district court denied the motion, ruling that <u>Lucio-Lucio</u> did not apply retroactively.

Following Rivera-Nevarez's request for reconsideration in which he again raised the retroactivity question and ancillary issues, the district court again erroneously rejected the contention that <u>Lucio-Lucio</u> applied retroactively, and denied the motion for reconsideration. The defendant, with the consent of the

government and agreement of the trial court,[1] then entered a conditional plea preserving the right of review on the issues raised in the motion to dismiss and motion for reconsideration. This appeal followed.[2]

Pursuant to Federal Rule of Criminal Procedure 11(a)(2), the conditional guilty plea entered by Rivera-Nevarez "reserve[d] the right, to the extent he has such a right, to appeal to the 10th Circuit Court of Appeals those issues raised in his Motion to Dismiss and Motion to Reconsider." (R. Doc. 18 at 1.) Federal Rule of Criminal Procedure 11(a)(2) provides:

Conditional Plea. With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere,

---

[1] Under Rule 11(a)(2), Rivera-Nevarez could enter a conditional guilty plea only if both the government consented and the district court agreed. The government was fully cognizant that Rivera-Nevarez was entering his plea to preserve his appeal of the district court's ruling on retroactivity: its brief and oral argument make that abundantly clear. Thus, remand of this case results in no harm to the government. See United States v. Moskow, 588 F.2d 882, 887 (3d Cir. 1978) ("In the case of a conditional guilty plea, the prosecution acquires no legitimate expectation of finality in the conviction.").

[2] In his opening brief, in accordance with Fed. R. App. P. 28, Rivera-Nevarez listed the issue presented on review as:
> Applying principles of statutory interpretation, are the BIA's en banc decision in In re Ramos, and this court's Lucio-Lucio decision, required to be applied retroactively to permit Rivera to invalidate his prior deportation which was incorrectly found to be an aggravated felony?

(Appellant's Br. at 1.) (emphasis added). At oral argument, Rivera-Nevarez requested that should we agree with defendant on his retroactivity analysis, we remand the case to the trial court.

reserving in writing the right to have an appellate court <u>review an</u> <u>adverse determination of a specified pre-trial motion</u>.  <u>A defendant</u> <u>who prevails on appeal may then withdraw the plea</u>.

(emphasis added).  In his motion to dismiss, the defendant moved the court "to enter an order dismissing the one count indictment in this case as the government cannot proceed due to a change in the interpretation of a law in effect at the time of the underlying deportation in this case." (R. Doc. 9 at 1.)  In support of the motion the defendant quoted our circuit speaking in <u>Lucio-Lucio</u>, as follows: "We agree with our sister circuits and the BIA that to call DWI a crime of violence would stretch the § 16(b) definition too far." **(**R. Doc. 9 at 2.)  The trial court's decision denying the motion to dismiss was based solely on its determination that <u>Lucio-Lucio</u> did not apply retroactively – the only "issue" raised in Rivera-Nevarez's motion to dismiss.  That "adverse determination" in the motion to dismiss was preserved for appeal under Rule 11(a)(2).

Nine months after the trial court's acceptance of the conditional plea, and while this appeal was pending, the Supreme Court decided <u>Leocal v. Ashcroft</u>, 125 S.Ct. 377 (2004).  As recognized by the majority, "the Supreme Court's decision in <u>Leocal</u> . . . conclusively established that DUI is not a 'crime of violence' under the INA." Slip op. at 7.  However, after recognizing that the

-3-

district court's conclusion that Rivera-Nevarez's removal was valid at the time it occurred was error, slip op. at 7, the majority concludes that error was harmless and affirms Rivera-Nevarez's conviction. Id. at 16, 22. I respectfully disagree.

Given the majority's conclusion that the district court erred in its determination on the issue of retroactivity raised in Rivera-Nevarez's motion to dismiss, a condition of the plea agreement has been met, and under Fed. R. Crim. P. 11(a)(2), "a defendant who prevails on appeal may then withdraw the plea." As far as I am concerned, the defendant has presented an open and shut case under Rule 11, that rule should be respected and followed, the case should be remanded, and that should end the case at this level.[3]

---

[3] Rivera-Nevarez staked his conditional plea on the issue of the retroactive effect of Lucio-Lucio raised in his motion to dismiss; the court denied his motion to dismiss on that basis. As such he has prevailed and must be allowed to withdraw his plea. See McCarthy v. United States, 394 U.S. 459, 466 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."); United States v. Leake, 95 F.3d 409, 420 (6th Cir. 1996) (holding that defendant should be permitted to withdraw plea following his partial success on appeal of suppression motion); United States v. Meija, 69 F.3d 309, 316 n.8 (9th Cir. 1995) ("If any ruling that forms a basis for the conditional [guilty] plea is found to be erroneous, we are required to permit the defendant to withdraw his plea."); United States v. Tantalo, 680 F.2d 903, 906, 911 (2d Cir. 1982) (holding remand to allow withdrawal of guilty plea is mandated when defendant prevails on appeal of issue). To affirm a conditional guilty plea by dismissing the district court's fundamental legal error as harmless under these circumstances would violate Rivera-Nevarez's due process right to be convicted only on the basis of a knowing and intelligent guilty plea. See, e.g. United States v. Bundy, 392 F.3d 641, 649 (4th Cir. 2004)

(continued...)

By resorting to harmless error review and by proposing to affirm the defendant's conviction notwithstanding Rivera-Nevaraz's right to withdraw his conditional plea, the majority fails to recognize that once the plea of guilty is withdrawn, there is no acceptance of guilt by plea, let alone a conviction that justifies such a decision. Because Rivera-Nevarez may withdraw his plea, the defendant does not stand convicted before us. By seeking to decide this case on these grounds the wrong court proposes to convict the defendant, without benefit of a trial before a trial judge or a jury.

The majority predicates its determination of harmlessness solely on its conclusion that Rivera-Nevarez "fails to meet his burden under § 1326(d)(2) to show that he was deprived of the opportunity for judicial review."[4] Slip op. at

---

[3](...continued)
(concluding that presence of one non-case-dispositive issue which appellate court will not address taints entire plea and renders defendant's conditional guilty plea invalid); United States v. Wise, 179 F.3d 184, 187 (5th Cir. 1999) (explaining that if record is ambiguous as to whether plea was conditional, appellate court may question the voluntariness of the plea, vacate the conviction, and remand for repleading).

[4] Although I do not think it necessary to decide the issue whether Rivera-Nevarez was deprived of the opportunity for judicial review, I nonetheless disagree with the majority's reasoning for two reasons. First the majority concludes that Rivera-Nevarez had an opportunity for judicial review because the uncertain legal environment at the time of Rivera-Nevarez's removal did not preclude judicial review as evidenced by the 5th Circuit's later decision in Max-George v. Reno, 205 F.3d 194, 199 (5th Cir. 2000), vacated on other grounds sub nom. Max-George v. Ashcroft, 533 U.S. 945 (2001), and the Eleventh Circuit's decision in Richardson v. Reno, 162 F.3d 1338, 1375-76 (11th Cir. 1998), vacated
(continued...)

-5-

11. In order to conclude that the district court's error was harmless we would

    [4](...continued)

on other grounds, 526 U.S. 1142 (1999), decided a mere two months before Rivera-Nevarez's removal. I do not view these cases as creating such a clear legal environment that a determination of the effective opportunity for judicial review can be drawn from the uncertain environment that followed AEDPA's and IIRIRA's 1996 passage without consideration of the facts of Rivera-Nevarez's removal proceedings. See United States v. Torres, 383 F.3d 92, 100-03 (3d Cir. 2004). Indeed, in United States v. Mendoza-Lopez, the Court held, despite the availability of both direct and habeas review, that the aliens were deprived of judicial review where their waivers of appeal were not considered or intelligent. 481 U.S. 828, 836-840 (1987). In drawing this conclusion, the Court evaluated the facts of the aliens' removal proceeding, including what information they were given by the Immigration Judge ("IJ"). Id. at 840-41; see also United States v. Lopez-Ortiz, 313 F.3d 225, 229 (5th Cir. 2002). The environment of legal uncertainty existing at the time of Rivera-Nevarez's 1999 removal would be but one factor, among many, to be taken into account in determining whether Rivera-Nevarez was deprived of the opportunity for judicial review. See, e.g., United States v. Sosa, 387 F.3d 131, 137 (2d Cir. 2004); United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1049 (9th Cir. 2004); United States v. Martinez-Rocha, 337 F.3d 566, 569-570 (6th Cir. 2003).

    Second, because Rivera-Nevarez facially waived his right to administrative review, the majority concludes that he knowingly and intelligently waived his right to judicial review under United States v. Arevalo-Tavares, 210 F.3d 1198, 1200-1201 (10th Cir. 2000). Only a knowing and intelligent waiver of administrative appeal would validly waive the contingent right to judicial review. See, e.g., Mendoza-Lopez, 481 U.S. at 840; Sosa, 387 F.3d at 136; United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 2003) (en banc) (recognizing same rule on due process grounds). The deportation proceeding in Arevalo-Tavares occurred in 1991 when criminal aliens had a statutory right to judicial review of their removal orders, as opposed to Rivera-Nevarez's 1999 removal proceeding which occurred when the statute unambiguously eliminated such a right. Indulging the presumption that an IJ would appropriately inform an alien of the right to judicial appeal is far more supportable in 1991, when criminal aliens had a statutory right to judicial review of their removal orders, than in 1999 during a period when the BIA believed, and the government maintained, that no such right existed.

have to be convinced that the error had no significant influence on Rivera-Nevarez's willingness to plead guilty. United States v. Gigot, 147 F.3d 1193, 1197-98 (10th Cir. 1993). I am not so convinced. Although a defendant in an illegal reentry criminal prosecution has the burden under 8 U.S.C. § 1326(d) to establish the statutory prerequisites for a collateral attack on the prior removal, in this appeal, the government must establish that the district court's error on retroactivity did not substantively affect Rivera-Nevarez's rights. It has not done so. The record clearly reflects that Rivera-Nevarez entered into the conditional guilty plea only after the district court twice rejected the claim that Lucio-Lucio applied retroactively to affect the validity of his 1999 removal.