**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOEL RODRIGUEZ-CHAVEZ,

Defendant-Appellant.

No. 04-3399

District of Kansas

(D.C. No. 03-CR-10180-MLB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **BARRETT**, and **McCONNELL**, Circuit Judges.

---

After being convicted for a felony offense of driving under the influence of

alcohol (DUI), Joel Rodriguez-Chavez was deported from the United States on

August 17, 1995. Eight years later, he was found in the United States and charged

in the United States District Court of Kansas with illegal reentry after deportation,

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is
therefore submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

in violation of 8 U.S.C. § 1326. He entered a conditional guilty plea, reserving the right to appeal all issues arising from his original deportation order. Mr. Rodriguez-Chavez was sentenced on October 4, 2004 to 51 months in prison. To arrive at this sentence, the district court made an upward departure of five points after considering Mr. Rodriguez-Chavez's unusually extensive history of driving while intoxicated.[1] Mr. Rodriguez-Chavez now appeals his conviction for illegal reentry by collaterally attacking the underlying deportation; in the alternative he appeals his sentence. We **AFFIRM**.

Mr. Rodriguez-Chavez's challenge to the underlying deportation begins with an undisputed point: the BIA improperly considered his felony DUI conviction a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). This BIA interpretation was subsequently rejected by the BIA sitting *en banc*, by this Court, and by the U.S. Supreme Court. *In Re Ramos*, 23 I. & N. Dec. 336, 347, 2002 WL 1001049 (BIA 2002) (en banc); *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204-06 (10th Cir. 2003); *Leocal v. Ashcroft*, 531 U.S. 1, 125 S. Ct. 377, 383-84 (2004). Because these subsequent interpretations are decisions of statutory construction, they apply retroactively. *United States v. Rivera-Nevarez*, 418 F.3d

---

[1] In the nineteen months before his original deportation, Mr. Rodriguez-Chavez had four DUI convictions. After his return to the United States, between November 2001 and February 2004, Mr. Rodriguez-Chavez received an out-of-state conviction for driving while ability impaired and six DUI convictions. The last five DUI convictions were felonies, and in each Mr. Rodriguez-Chavez had a blood alcohol level between three and four times the legal limit in Kansas.

1104, 1107 (10th Cir. 2005). Accordingly, when Mr. Rodriguez-Chavez was deported, his felony DUI conviction should not have been considered a "crime of violence."

Nevertheless, Mr. Rodriguez-Chavez has failed to meet the statutory requirements for a collateral attack on a deportation order, which are set forth at 8 U.S.C. § 1326(d). These requirements are that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id*. In *Rivera-Nevarez* this Court considered these requirements and rejected an essentially identical collateral attack. *Rivera-Nevarez*, 418 F.3d at 1107-11. Mr. Rodriguez-Chavez makes no argument that he satisfies any, much less all three, of the statutory requirements. As in *Rivera-Nevarez*, the defendant has the burden of proving the statutory requirements were met, and even assuming the defendant exhausted his administrative remedies and the deportation was fundamentally unfair, he has not proved that he was deprived of his opportunity for judicial review. *Cf. id.* at 1109. Without meeting the statutory criteria, Mr. Rodriguez-Chavez cannot collaterally attack the underlying deportation order.

Mr. Rodriguez-Chavez also challenges his sentence of 51 months. Specifically, he challenges the district court's upward departure and requests a

remand for resentencing without a departure. The Sentencing Guidelines range for Mr. Rodriguez-Chavez's offense was 24-30 months.[2] With the district court's upward departure of five points, the range was 41-51 months, and the district court imposed a sentence of 51 months.

The district court offered several reasons for its departure. The first was U.S.S.G. § 4A1.3, which allows an upward departure when the defendant has "an egregious, serious criminal record" not adequately reflected even by Criminal History Category VI. The district court noted that Mr. Rodriguez-Chavez qualified for Criminal History Category VI even if the court considered only his convictions since his illegal reentry; yet, before the reentry Mr. Rodriguez-Chavez had already qualified for Criminal History Category IV. Second, the district court noted U.S.S.G. § 5K2.14, which allows upward departures when public safety is significantly endangered. Third, without citing a provision in the Guidelines, the district court found that the "defendant's lengthy record of drunk driving convictions, which appears to be interrupted only by periods of incarceration," warranted an upward departure. Finally, the district court justified an upward departure by noting Mr. Rodriguez-Chavez's use of a deadly weapon, namely his car. *See United States v. Jones*, 332 F.3d 1294, 1306 (10th Cir. 2003). The

---

[2] The parties do not dispute this calculation, which the district court arrived at by taking the base offense level of eight, adding four because the defendant remained in the United States after conviction for a felony offense, and subtracting two for acceptance of responsibility.

district court offered alternative methodologies for this fourth justification, one based on U.S.S.G. § 2A2.2 and the other based on U.S.S.G. § 5K2.6. After offering these four reasons for an upward departure, the court concluded that it was departing one level based on U.S.S.G. § 5K2.14 (public safety) and four levels based on U.S.S.G. § 2A2.2 (dangerous weapon).

In *United States v. Booker* the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 125 S.Ct. 738, 756 (2005) (excising 18 U.S.C. §§ 3553(b)(1), 3742(e)). Because Mr. Rodriguez-Chavez's objections to the upward departure were properly preserved, we review for harmless error. *United States v. Labastida-Segura*, 396 F.3d 1140, 1142-43 (10th Cir. 2005). We consider in turn two arguments by the Defendant.

First, Mr. Rodriguez-Chavez claims that in making its upward departure the district court violated his Sixth Amendment rights by considering prior convictions without a jury finding them proved beyond a reasonable doubt. Whatever the merits of this argument as an abstract proposition, the Supreme Court has repeatedly and explicitly allowed judicial notice of prior convictions. *See, e.g.*, *Booker*, 125 S. Ct. at 756; *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).

Second, Mr. Rodriguez-Chavez makes a number of other arguments against the upward departure. Even accepting these arguments and assuming arguendo that the upward departure was unconstitutional under *Booker*, we still find the error harmless. An error is harmless if it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992). In this case, the district court's various rationales for the upward departure were all based on Mr. Rodriguez-Chavez's prior convictions and the conclusions that the court drew from those convictions, such as the danger Mr. Rodriguez-Chavez posed to the public. Assuming arguendo that it was not a judge's place to draw these conclusions, we cannot imagine the district court imposing a less severe sentence with its post-*Booker* discretion. *See United States v. Riccardi*, 405 F.3d 852, 876 (10th Cir. 2005).

The court offered more reasons than were necessary for the upward departure, and for one of its reasons the court offered alternative methodologies for reaching the result. The district court made clear that "the public needs to be protected from defendant's habitual drunk driving" and suggested it was "nothing short of a miracle that defendant ha[d] not seriously injured or killed another driver or pedestrian." Deportation was not a sufficient remedy, the district court said, and "the *only* way to protect the public in the United States from defendant's drunk driving is to incarcerate him for the longest available period before his deportation." Taken together, this analysis and the sentence—the highest possible

-6-

after the upward departure—indicate that the district court would not exercise its greater discretion after *Booker* to reduce the sentence. *Riccardi*, 405 F.3d at 875-76. Indeed, the opposite seems likely.

We also have no reason to believe that a jury would have reached a different conclusion than the district court about Mr. Rodriguez-Chavez's danger to public safety and his use of his car as a dangerous weapon. *See id.* at 876. We have held that a motor vehicle is a dangerous weapon where the defendant, even without a "*specific intent* to use the dangerous weapon," uses "the instrumentality . . . in such a way that it presents a high risk of inflicting injury." *Jones*, 332 F.3d at 1306 n.18 and n.19 (considering the general definition of "dangerous weapon" at U.S.S.G § 1B1.1 and the specific definitions at U.S.S.G §§ 2A2.2 and 2B3.1). Given Mr. Rodriguez-Chavez's ten DUI convictions in Kansas alone, in the last five of which his blood alcohol level ranged from .287 to .319, we are confident that a jury would find that a car driven by Mr. Rodriguez-Chavez in an intoxicated state "present[ed] a high risk of inflicting injury" and was thus a dangerous instrumentality under U.S.S.G. § 5K2.6.[3]

---

[3]The district court offered alternative methodologies for an upward departure of four points based on Mr. Rodriguez-Chavez's use of his car as a dangerous weapon or instrumentality. Each alternative relied on a different provision of the Sentencing Guidelines. The first provision, U.S.S.G. § 2A2.2, does not justify the departure because DUIs are not aggravated assaults. But the second, U.S.S.G. § 5K2.6, supports the district court's four-level upward departure. Mr. Rodriguez-Chavez often drove while extremely intoxicated, and

(continued...)

Although Mr. Rodriguez-Chavez's sentence was imposed in violation of the Sixth Amendment standards announced in *Booker*, we are satisfied that the error was harmless and must be disregarded.

Mr. Rodriguez-Chavez also argues that application of the *Booker* remedial opinion would violate *ex post facto* principles in the Due Process Clause (of the Fifth Amendment, presumably). Boldly, Mr. Rodriguez-Chavez argues that the remedial opinion does not apply retroactively because it was "unexpected and indefensible." *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001). This is a conclusion we have no power to reach.

For the reasons given, the judgment of the United States District Court for the District of Kansas is **AFFIRMED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge

---

[3](...continued)
we are confident that a jury would have concluded, like the district court, that in such circumstances Mr. Rodriguez-Chavez car's was a "dangerous instrumentality" that put others at great risk.